WM. F. WALKER *vs.* J. W. FUQUA, Administrator, &c.

*Miller, Administrator,* v. *Helm et al.,* 2 S. & M. 698, cited and construed by the court, and declared not applicable to this case.

In a case like the present, the record, which authorizes and completes the sale, is all the law requires to create a mortgage in favor of the administrator.

The statute (Hutch. Code, 675, § 3) creating the mortgage, which says, " that the property shall be liable to the payment of the purchase-money in the same manner as if a mortgage had been taken," only designates the manner in which the lien given may be enforced.

The judgment creditor, under whom W. claims, can only be considered as a junior creditor, and a sale under a junior lien will not impair the rights of the party holding the senior lien.

IN error from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The complainant, Fuqua, administrator, &c., of John Emer-

son, deceased, filed his bill in the superior court of chancery, to subject certain negroes therein named to the lien given him by law, as administrator on the property sold, to secure the payment of the purchase-money.

The negroes were sold, by the administrator of Emerson, to Hart; and they were afterwards levied on and sold as the property of Hart, at sheriff's sale, to Walker, who purchased without notice of the administrator's lien on them. The chancellor decreed in favor of Fuqua, and Walker prosecuted this writ of error.

*A. H. Handy*, for plaintiff in error.

1st. We insist that the statutory mortgage cannot operate against the defendant, Walker. He purchased the property at execution sale, as the property of Hart, *bonâ fide*, and for full consideration, without notice. The statutory mortgage operates against Hart and "his assignees;" but Walker cannot, in any legal or equitable sense, be considered as the assignee of Hart. "When a statute speaks of an 'assignee,' it is to be intended as such complete assignee, who has all the ceremonies and incidents requisite by the law to such character, not taking away any form or circumstance which the law requires." Dwarris on Stat. 773 (7 Law Lib.). In strictness of law, therefore, Walker is not the assignee of Hart, and not within the operation of the statute.

There is an obvious distinction between the position of a party who purchased from Hart, and thereby became his "assignee," and of a party who purchased at judicial sale. For, 1. The purchaser at judicial sale derives his right and title from the law, and not from the individual act of the vendor; 2. The purchaser at private sale from Hart would have ample means of protecting himself, first, by requiring a warranty from the vendor; and secondly, and mainly, by having the power to learn from the vendor the condition of his title and of the property, by inquiry from the vendor, and thereby be put on the inquiry as to the title, which would amount to notice of the incumbrance, in law. It is presumed, that a party purchasing at private sale would inquire and learn of the vendor the state of his

title; and if he fail to do so and take no warranty, it would constitute such gross negligence as would debar him of the protection of a *bonâ fide* purchaser without notice.

But the case is far different with a purchase at judicial sale; for he can obtain no warranty, nor has he it within his power to obtain from the defendant in execution, information as to the condition of the property. For such defendant is not bound to impart any such information, nor would he be liable for any misrepresentations in regard to the matter.

When property, then, is sold at sheriff's sale, what probable means have bidders to learn whether it is liable or not to any such secret incumbrance as the statutory lien set up in this case? What possible clue would the bidder have to lead him to a knowledge of such incumbrance? It is not spread plainly in the register of conveyances and mortgages, where he might find it, nor would the bidder know in what probate court, or in what estate of all the estates in this State, to search for this hidden incumbrance; and still, if the doctrine on which this bill is founded be correct, the property would be liable in any county in the State, however remote from the place where the means of finding out the incumbrance were, and however improbable or impossible it might be for any purchaser at sheriff's sale, however diligent, to find it out.

If this doctrine, then, be true, no man could safely purchase property at sheriff's sale; and its tendency is to hinder and obstruct the sale of such property at its full value. And we submit, that these considerations show that the statute should have no further extent than its plain and obvious terms import.

2d. Walker, being a *bonâ fide* purchaser without notice, and for valuable consideration paid, is entitled to full protection in a court of equity. Story's Eq. Jurisp. § 434–436. And if there be any doubt in the matter, it will always be resolved in favor of such purchaser. And the doctrine is firmly settled in courts of equity, that if the purchaser had not notice, and could not have obtained it by reasonable diligence, and had nothing to put him on the inquiry as to the incumbrance, he will be protected. Ib. 409, 410, 411; and this is the rule even in regard to proper and technical mortgages; and it can scarcely be contended that this

statutory mortgage has further extent than a proper technical mortgage.

*Lawson,* for defendant in error.

By this statute we think the legislature secured the lien on the property sold by the administrator, precisely to the same extent as if a mortgage had been executed. In support of this position, we refer to *Miller, Administrator,* v. *Helm et al.,* 2 S. & M. 698, 699.

The above case we think decisive of the correctness of the decree of the chancellor in the case at bar.

In the case cited, Womack administered on the estate of Dickson, and as such sold a portion of the slaves to Wiley Davis. Davis died, and his administrators sold the slaves to Helm, and others. The negroes were sought to be subjected in the hands of the purchasers from Davis's administrator to the debt due to Dickson's estate. And the court held them liable to pay the debt to Dickson's estate.

The purchasers at the sale of Davis's property from his administrator, it appears to me, would occupy at least as favorable a situation as one who had purchased the same property at sheriff's sale, sold as the property of Davis under execution. If so, then the negroes in controversy are liable in the hands of Walker, who purchased the negroes at sheriff's sale, under execution against Hart.

But suppose a mortgage had been actually executed, and recorded by Hart at the time of his purchase, would not Walker have taken them, subject to the mortgage? The court, in the case referred to, say: " The equity here is founded not on an actual, but on a legal mortgage; one which exists by operation of law merely. The law declares, that the property shall be bound as in case of mortgage. The imagination, then, must first create a mortgage deed, and then transfer it to the record of the proper office, for no mortgage binds until it is recorded. That which binds as a mortgage must possess all the attributes of a valid operative mortgage." " The inference is, that when it declared the existence of a mortgage, it intended to assimilate it in all respects to a common mortgage; and that the assignee

should take notice at his peril. It was given for the protection of the estate; and we cannot defeat the protection which it affords, by declaring it inferior to, or different from, what the law has made it. It is safer, on the contrary, to consider it in every particular as a mortgage, and to require all having an interest, to notice it as such."

Mr. Justice FISHER delivered the opinion of the court.

This was a bill filed by the administrator of the estate of John Emerson, deceased, to enforce the lien given by the statute on property sold by the representatives of deceased persons, to secure the purchase-money.

The defendant in error, about the year 1837, sold at public sale in the county of Yazoo, under an order of the probate court of said county, certain slaves, as part of the estate of the intestate, which were purchased by one Thomas J. Hart, who was a citizen of the county of Madison, at the sum of fifteen hundred dollars. Hart removed the slaves to Madison county, where they were afterwards sold by the sheriff of said county, by virtue of executions in his hands against Hart, and were purchased by Walker, the plaintiff in error, at a full and fair price, without any notice of the lien for the purchase-money due the administrator of Emerson. And the question for decision is, whether this defence of Walker, he being a *bonâ fide* purchaser at execution sale, without notice of the lien, will protect him. This, of course, must depend upon the construction of the statute, which says, that property sold by an administrator, &c., shall be liable to the payment of the purchase-money, in preference to any other claim against the purchaser, or the assignee of such purchaser." Hutch. Code, 675, art. 8, § 3. In the case of *Miller, Administrator, &c.* v. *Helm et al.,* 2 S. & M. 698, the court, remarking upon this statute, said that "the imagination must first create a mortgage deed, and then transfer it to the record of the proper office, for no mortgage binds until it is recorded. That which binds as a mortgage must possess all the attributes of a valid operative mortgage. The court further said, that "it was given for the protection of the estate; and we cannot defeat the protection which it affords, by declaring it

inferior to or different from what the law has made it." " It is safer, on the contrary, to consider it in every particular as a mortgage, and to require all having an interest to notice it as such." " In addition to this, an administrator sells by order of court, and returns his account of sales, which is constructive notice to every one." This language must be considered in reference to the point then before the court, which was, whether the claim, so far as it related to the remedy on the mortgage, should have been presented to the administrator of Davis, within eighteen months after publication for that purpose; and the court entered into this argument, to show that the remedy to enforce the lien, given by the statute to the administrator of Dickson, whose estate had been sold by the administrator, and purchased by Davis, who had died, was not affected or impaired by a failure to present the claim to his administrator within the eighteen months.

The decision will be found to have but a very remote bearing on the point under consideration in this case. If the lien is to be treated precisely " as a mortgage deed recorded in the proper office," the question is still open, in this case, as to the county in which the record must be considered to have been made. The sale was made in the county of Yazoo, under an order of the probate court of that county, and the purchaser, Hart, resided in the county of Madison, to which we must suppose he removed the slaves purchased. If the lien be likened to a recorded mortgage, reason and common sense would say that the record would be considered as made in that county in which the sale was made, because the evidence to sustain the lien is in point of fact of record in that county; and if it be thus confined, many cases may arise in which it would not be operative; for we must understand in all cases, when a person residing in another county becomes a purchaser of property at such sale, that the administrator consents to a removal of the property to the county of the purchaser's residence; and if so, the lien being treated as a mortgage, to follow the property, must be made a matter of record in such county, within a year thereafter, to be valid. And the question then would arise, How an ideal mortgage, or one, in the language of the court,

created by the imagination, could be recorded ? In our opinion, the only record required is that which authorizes the administrator to make a valid sale. The record which authorizes and completes the sale, is all the record that the law requires ; and thus, without any aid of the imagination, creates a lien for the purchase-money. This view of the question is fully sustained by the language of the statute, which says, that real or personal property sold by an administrator " shall be held and remain subject to the payment of the sum or sums for which it was sold, and the interest and costs accruing thereon, in preference to any other claim or claims against the purchaser of such property, or the assignee of such purchaser." The law says, that the property shall be liable to the payment of the purchase-money, in preference to any other claim against the purchaser. This language admits of no construction. The right to a prior satisfaction out of the property sold by the administrator, exists in his favor against all and every person asserting a claim against the purchaser. This right follows the property, wherever it may be taken in any part of the State, without any other record than that which was necessary, in the first instance, to create the lien itself. However broad this position may appear, it is only giving full effect to the language of the statute, which, in general and unqualified language, makes the property sold liable to the purchase-money, in preference to any other claim against the purchaser. It is, however, contended, that this language is to be controlled by that which follows, which is this : " And (it) shall be liable to the payment of the purchase-money, in the same manner as if a mortgage had been taken on the said property to secure the payment thereof." The words, " in the same manner," relate to the lien given in the previous part of the statute, and merely designate what the lien shall be like, and points to the remedy to enforce it. The manner in which a lien may operate, or be enforced, is one thing, and the extent of its operation another. A lien created by judgment in this State at one time, was held equal to a lien created by mortgage. Yet while these liens were the same in extent as a mere security, the manner of enforcing them was wholly different. A lien may operate in the same manner in

which a mortgage would operate, and still be relieved from those things which may limit the operation of the latter. The clause in the statute, saying that the property shall be liable to the payment of the purchase-money in the same manner as if a mortgage had been taken, &c., must not be construed as limiting the lien given in the previous clause, but only as designating the manner in which the lien thus given may be enforced. If this last clause had been omitted, not a doubt could be entertained as to the meaning of the statute. The property sold by an administrator would then be clearly liable to the purchase-money, in preference to any other claim. Can it be justly said, that the last clause was only intended to limit the sense or meaning of the language previously employed? Clearly not. The whole law must be construed together, by ascertaining the end which the legislature designed to accomplish.

The title of Walker cannot be treated more favorably than the judgment creditor's right to sell the slaves under his execution. If the law prohibited the sale, it at the same time prohibited Walker's purchase. The greatest right which could be conceded to the judgment creditor would only give him a lien on the slaves, junior to that of the complainant; and Walker could not be regarded more favorably than a purchaser under the junior lien. A prior lien is entitled to a prior satisfaction; and a sale under the junior lien would not in the least impair the rights of the party holding the senior one.

Under any view which can be taken of the question, we think that the defence set up cannot be sustained.

Decree affirmed.


YERGER, Judge, was counsel in the court below, and took no part in the decision of this case.